```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - X
JOE HAND PROMOTIONS, INC.,  as
Broadcast Licensee of the June 11,
2005 Tyson/McBride Program,
                                            REPORT AND
                     Plaintiff,             RECOMMENDATION

                                            CV 2006-1880 (ERK)(MDG)
          - against -

STEVE IRIS, Individually and d/b/a
EXCLUSIVE UNISEX SALON, and
EXCLUSIVE UNISEX SALON,

                     Defendants.
- - - - - - - - - - - - - - - - - - X
```

Go, United States Magistrate Judge:

Plaintiff Joe Hand Promotions, Inc. ("plaintiff") brings this action under Title 47 of the United States Code alleging that defendants Steve Iris ("Iris"), individually and doing business as Exclusive Unisex Salon, and Exclusive Unisex Salon (the "Salon") (collectively referred to as "defendants") violated sections 553 and 605 by intercepting and displaying to their customers, without plaintiff's authorization, a pay-per-view cable television broadcast.

After entry of default following defendants' failure to appear or otherwise defend in this action (ct. doc. 9), the Honorable Edward R. Korman granted plaintiff's motion for default judgment and referred to me to report and recommend on the issues of damages and attorneys' fees.  See ct. doc. 10.

PERTINENT FACTS

The facts pertinent to determination of this motion are undisputed and are set forth in the Complaint ("Compl.") (ct. doc. 1); the July 31, 2006 affidavit of Joe Hand, President of plaintiff ("Hand Aff.") (ct. doc. 8-2); the September 27, 2006 affidavit of Julie Cohen Lonstein, Esq., counsel for plaintiff ("Lonstein Aff.") (ct. doc. 8-3); and the June 16, 2005 affidavit of investigator Joseph Dennis ("Dennis Aff.") (attached as Exhibit E to the Hand Aff.). Defendants did not file any opposing papers.

Plaintiff is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business located in Feasterville, Pennsylvania. Compl. at ¶ 5. The Salon is a business entity located at 129-24 Merrick Boulevard, Jamaica, New York. Id. at ¶ 10. Defendant Iris resides in the State of New York. Id. at ¶ 6.

Plaintiff owns the rights to distribute via closed-circuit television and encrypted satellite signal the Tyson/McBride boxing match, including all undercard bouts and the entire television broadcast scheduled for June 11, 2005 (the "program"). Id. at ¶ 15; Hand Aff. at ¶ 3, Exh. A. Plaintiff entered into sub-license agreements with various entities to show the program to their patrons. Compl. at ¶¶ 16-17; Hand Aff. at ¶ 3. The broadcast originated as a satellite uplink and was re-transmitted to cable and satellite providers via a satellite signal. See

Compl. at ¶ 15.

Defendants did not contract with plaintiff, and thus, were not authorized to receive and publish the program. Hand Aff. at ¶ 9. As set forth in his affidavit, investigator Joseph Dennis observed the unauthorized public showing of the program at the Salon to 8 customers. Dennis Aff. at 2. Entering the establishment at approximately 11:12 p.m. on June 11, 2005, investigator Dennis observed, <u>inter</u> <u>alia</u>, the end of the boxing match between Tyson and McBride. <u>Id.</u> at 1.

Following defendants' failure to answer the Complaint, plaintiff filed a motion for judgment by default on September 29, 2006. Ct. doc. 10.

<u>DISCUSSION</u>

I. <u>Legal Standards Governing Default</u>

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except for those relating to damages. <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992); <u>Au Bon Pain Corp. v. Artect, Inc.</u>, 653 F.2d 61, 65 (2d Cir. 1981). A default also effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct; that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged. <u>Greyhound</u>, 973 F.2d at 159. The movant need prove "only that the compensation sought relate to the damages that naturally flow from the

injuries pleaded." Id.

The court must ensure that there is a reasonable basis for the damages specified in a default judgment. Actual damages or statutory damages may be assessed. In determining damages not susceptible to simple mathematical calculation, Fed. R. Civ. P. 55(b)(2) gives a court the discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)). The moving party is entitled to all reasonable inferences from the evidence it offers. Au Bon Pain, 653 F.2d at 65 (citing Trans World Airlines, Inc. v. Hughes, 308 F. Supp. 679, 683 (S.D.N.Y. 1969)).

II. Determination of Damages

A. Liability

Both sections 553 and 605 of Title 47 prohibit the unauthorized reception of cable programming. Section 553(a)(1) specifically applies only to cable transmissions and provides that, "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." Section 605(a) generally provides that, "[n]o person not being authorized by the sender shall intercept any radio

communication . . . or assist in receiving any interstate or foreign communication by radio and use such communication . . . for his own benefit or the benefit of another not entitled thereto." When television programming is transmitted or intercepted over both cable and satellite mediums, both sections 553 and 605 apply. See Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 130 (2nd Cir. 1996) ("Sykes II") (noting that section 605 applies to "the interception of cable-borne, as well as over-the-air, pay television" where cable-borne transmissions originate as satellite transmissions); see also Cmty. Television Sys., Inc. v. Caruso, 284 F.3d 430, 435 (2d Cir. 2002).

Plaintiff's submissions establish that plaintiff had the right to distribute the program, which originated via satellite uplink, and that the program was displayed in violation of sections 553 and 605 of Title 47. Compl. at ¶¶ 15-19; Joseph Aff. at 1-2; Hand Aff. at ¶ 3, Exh. A. Investigator Joseph observed the program being displayed at Exclusive Unisex Salon, a business alleged to be operated by defendant Iris, even though defendants had not contracted with plaintiff to do so. Joseph Aff. at 1-2. Consequently, this Court finds that there was unlicensed reception and exhibition of the transmissions at the Salon in violation of sections 553 and 605 of Title 47.

Plaintiff alleges that Exclusive Unisex Salon "is a business entity, the exact nature of which is unknown." Compl. at ¶ 10. Based on this Court's own search of the records of the New York

Secretary of State, there is no corporation or partnership with the name Exclusive Unisex Salon in Queens County. An action cannot be maintained against a business operating under a trade name. See Ragin v. Harry Mack Lowe Real Estate Co., Inc., 126 F.R.D. 475, 480 (S.D.N.Y. 1989); Provosty v. Lydia E. Hall Hosp., 91 A.D.2d 658, 659, 457 N.Y.S.2d 106 (2d Dep't 1982); Marder v. Betty's Beauty Shoppe, 38 Misc.2d 687, 687-88, 239 N.Y.S.2d 923, 924 (2d Dep't 1962). Although the Court has already ordered entry of default judgment against this defendant (ct. doc. 10), I recommend no damages be awarded against it since there is no well-plead allegation that Exclusive Unisex Salon is a suable entity.

On the other hand, an action can be maintained against an individual doing business under a trade name. See Ragin, 126 F.R.D. at 480; Provosty, 91 A.D.2d at 659; Marder, 38 Misc.2d at 687-88. Plaintiff's complaint names Steve Iris both individually and doing business under the trade name of Exclusive Unisex Salon. Plaintiff also alleges that Iris is the principal of the Salon and that Iris had supervisory capacity and control over the Salon's activities on June 11, 2005. These allegations, even though alleged upon information and belief, are deemed admitted. See Fong v. United States, 300 F.2d 400, 409 (9th Cir. 1962) (finding allegations on information and belief sufficient to hold defendant individually liable on default judgment because they stated facts primarily within defendant's knowledge); 71 C.J.S.

Pleading § 82.  The process server also served Iris at the Salon. See ct. docs. 3, 9.  Thus, Iris may be held liable for violating Title 47.

   B.   Damages

Plaintiff requests damages pursuant to section 605, rather than section 553.  Pl. Mem. at 5-7.  Where a defendant is liable under both sections 553 and 605, the plaintiff is entitled to have damages awarded under section 605 because it provides greater recovery than does section 553.  See Sykes II, 75 F.3d at 127; Entm't by J & J, Inc. v. Mama Zee Rest. & Catering Servs., Inc., No. CV-01-3945, 2002 WL 2022522, at *3 (E.D.N.Y. May 21, 2002) (recovery under both sections 553 and 605 is impermissible).

Section 605 allows plaintiff to elect to recover either actual damages and lost profits, or statutory damages.  See 47 U.S.C. § 605(e)(3)(C)(i).  Section 605(e)(3)(C)(i)(II) authorizes statutory damages of no less than $1,000 and no more than $10,000 for each violation of section 605(a).  That section vests the court with the discretion to determine the amount of statutory damages, authorizing the court to award an amount "as the court considers just."  See Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. 480, 484 (D. Conn. 1993); see also Joe Hand Promotions, Inc. v. Nekos, 18 F. Supp. 2d 214, 217 (N.D.N.Y. 1998) (the court has "discretion to adjust the amount awarded to the plaintiff").  In addition, section 605(e)(3)(C)(ii) vests the

court with the discretion to increase the award of damages where "the court finds that the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain."  The court is authorized to award enhanced damages of up to $100,000 for each willful violation.

In exercising such discretion, courts should be mindful of the difficulty in detecting such violations and the widespread problem of piracy.  See Cablevision Sys. New York City Corp. v. Faschitti, No. 94 Civ. 6830, 1996 WL 48689, at *2 (S.D.N.Y. Feb. 7, 1996); see also Sykes II, 75 F.3d at 132 (quoting legislative history).  The court should therefore grant damages in an amount which achieves the deterrent purposes of the statute.  See Cablevision Sys. New York City Corp. v. Lokshin, 980 F. Supp. 107, 113 (E.D.N.Y. 1997).

Plaintiff seeks to recover the maximum statutory damages allowed in the amount of $10,000 and enhanced damages up to $100,000 for each defendants' willful violation of section 605. Pl. Mem. at 8.  Some courts presented with sufficient evidence indicating the number of patrons present at the time of the unauthorized programming have employed a formula that multiplies that number by a dollar amount, usually based on the customary charge for the event in question.  See, e.g., Mama Zee, 2002 WL 2022522, at *3 (awarding $50 per patron), Time Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999) (same); Time Warner Cable of New York City v.

Taco Rapido Rest., 988 F. Supp. 107, 111 (E.D.N.Y. 1997) (same). Other courts have simply assessed a flat damages amount per violation. See Joe Hand Promotions, Inc. v. Hernandez, No. 03 Civ. 6132, 2004 U.S. Dist. LEXIS 12159 (S.D.N.Y. June 30, 2004) (awarding $1,000 statutory damages and $1,500 enhanced damages for a one-time boxing match exhibited to about 20 customers); Garden City Boxing Club, Inc. v. Ayisah, 02 Civ. 6673, 2004 U.S. Dist. LEXIS 7867 (S.D.N.Y. Apr. 28, 2004) (awarding $3,000 statutory damages and $5,000 enhanced damages for a one-time boxing match exhibited to 60 customers); Kingvision Pay-Per-View, Ltd. v. Jasper Grocery, 152 F. Supp. 2d 438 (S.D.N.Y. 2001) (awarding $5,000 statutory damages for a one-time boxing match exhibited to 30 customers).

A number of judges in this district have awarded damages based on the number of patrons or the capacity of an establishment multiplied by the residential fee for a pay-per-view broadcast. See, e.g., Kingvision Pay-Per-View Ltd. v. Cazares, No. CV-05-2934, 2006 WL 2086031, at *3-*4 (E.D.N.Y. July 25, 2006) (adopting recommendation of statutory damages award based on $54.95 residential rate for each patron present during broadcast of event); Garden City Boxing Club, Inc. v. Rosado, No. CV-05-1037, 2005 WL 3018704, at *4 (E.D.N.Y. Oct. 6, 2005) (recommending statutory damage award of $989.10 based on $54.95 for each of the 19 patrons observed in the establishment); Garden City Boxing Club, Inc. v. Bello, No. CV-05-1300, 2005 WL 2496062,

at *3 (E.D.N.Y. Sept. 20, 2005) (recommending statutory damages based on $54.95 residential rate for each of the 40 patrons who could have viewed the prize fight based on the establishment's capacity). Courts using the residential fee reason that this is the amount each patron would have paid to view the boxing match from home had he or she not had access to a broadcast at the establishment at issue. See Bello, 2005 WL 2496062, at *3. Although plaintiff has not submitted any evidence as to the residential rate for this broadcast, the typical purchase price for a pay-per-view broadcast of this nature is $54.95. See Cazares, 2006 WL 2086031, at *3; Rosado, 2005 WL 3018704, at *3; Bello, 2005 WL 2496062, at *3.

Plaintiff has submitted evidence that 8 customers were present at the Salon when investigator Joseph observed the program being illegally displayed. Joseph Aff. at 1-2. Accordingly, damages based on 8 customers multiplied by the residential rate of $54.95 would equal $439.60. Since the amount is less than the statutory minimum, I recommend that damages be awarded against Iris in the amount of $1,000 to deter future violations.

Further, I recommend that the Court grant plaintiff's request for enhanced damages against defendant Iris. Defendants who intercept signals and broadcast programming without authorization "in a place of business where certain events are shown to the public" are generally held to have acted willfully

and for purposes of commercial advantage. Am. Cablevision of Queens v. McGinn, 817 F. Supp. 317, 320 (E.D.N.Y. 1993) (citing Cablevision Sys. Corp. v. Maxie's North Shore Deli Corp., No. 88 CV 2834, 1991 WL 58350 (E.D.N.Y. Mar. 20, 1991)). Since knowledge of infringement may be "actual" or "constructive," it need not be proven directly and can be inferred from the defendant's conduct. See Knitwaves, Inc. v. Lollytogs, Ltd., 71 F.3d 996, 1010 (2d Cir. 1995); N.A.S. Import Corp. v. Chenson Enters., Inc., 968 F.2d 250, 252 (2d Cir. 1992). A defendant's default may also be considered as evidence of willful infringement. See Kenneth J. Lane, Inc. v. Heavenly Apparel, Inc., No. 03 CV 2132, 2006 WL 728407, at *6 (S.D.N.Y. March 21, 2006); Peer Int'l Corp. v. Max Music & Ent'mt, No. 03 Civ. 0996, 2004 WL 1542253, at *3 (S.D.N.Y. July 9, 2004); Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003). Courts consider a variety of factors to determine whether a defendant's willful conduct warrants enhanced damages. These factors include: "repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; [and] defendant's charging a cover charge or charging premiums for food and drinks." Kingvision Pay-Per-View, Ltd. v. Recio, No. 02 Civ. 6583, 2003 WL 21383826, at *5 (S.D.N.Y. June 11, 2003) (internal citations omitted).

Unlike cases involving bars and restaurants, there is no

evidence that defendants were conducting business during the program or making any money as a result of broadcasting the program.  The investigator did not pay a cover charge nor were there any food or beverages sold or available for sale.  Nevertheless, the undisputed facts presented by plaintiff in its complaint and the supporting affidavits clearly establish that the Salon is a commercial establishment that publicly displayed the Tyson/McBride boxing match to customers without authorization.  Iris may have gained goodwill with his customers by remaining open until after 11:00 p.m. and displaying the program.  Thus, I recommend that enhanced damages in the amount of $1,000 be awarded against Iris.

    C.   <u>Attorneys' Fees and Costs</u>

Plaintiff seeks to recover its attorneys' fees and costs totaling $1,487.50.  Lonstein Aff. at ¶ 3.  Title 47 U.S.C. § 605(e)(3)(B)(iii) mandates that reasonable attorneys' fees and costs be awarded to a prevailing aggrieved party.  <u>Int'l Cablevision, Inc. v. Sykes</u>, 997 F.2d 998, 1009 (2d Cir. 1993) ("<u>Sykes I</u>").  The standard method for determining the amount of reasonable attorneys' fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," or a "presumptively reasonable fee."  <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983); <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 522 F.3d 182, 188-90 (2d Cir. 2008);  <u>Chambless v. Masters, Mates & Pilots</u>

Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989).

In reviewing a fee application, the district court must examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case. See Lunday v. City of Albany, 42 F.3d 131, 133 (2d Cir. 1994); DiFilippo v. Morizio, 759 F.2d 231, 235 (2d Cir. 1985). If any expenditure of time was unreasonable, the court should exclude these hours from the calculation. See Hensley, 461 U.S. at 434; Lunday, 42 F.3d at 133. The court should thus exclude "excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999). A party seeking attorneys' fees bears the burden of supporting its claim of hours expended by accurate, detailed and contemporaneous time records. New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983).

A reasonable hourly rate is "the rate a paying client would be willing to pay," "bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190. Reasonable hourly rates are determined by examining the rates "'prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation.'" Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (quoting Blum v. Stevenson, 465 U.S. 886, 896 n.11 (1984). Determination

of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community. Chambless, 885 F.2d at 1059. The "community" is generally considered the district where the district court sits. See Arbor Hill, 522 F.3d at 190.

Plaintiff seeks to recover $937.50 in attorneys' fees. Lonstein Aff. at ¶ 4. In support of that request, plaintiff has submitted an affidavit from Julie Cohen Lonstein detailing the work done, hours expended, and the total amount due. Id. Ms. Lonstein states that attorney work totaled 3.75 hours at a rate of $200 per hour, totaling $750, and 2.5 hours of paralegal time was expended at a rate of $75 per hour, totaling $187.50. Id. Although the rate sought by plaintiff for attorney time may be reasonable, plaintiff fails to provide any information identifying the attorneys who worked on this matter and the experience of the attorneys. If the work is performed by an associate with only a few years of experience, then I would find the $200 per hour rate unreasonable based on my knowledge of prevailing rates for such matters in this district. See LaBarbera v. ESL Home Remodeling Inc., No. 06-CV-1372, 2007 WL 708359, at *6 (E.D.N.Y. Feb. 28. 2007) (reducing associate's rate to $150 per hour); King v. STL Consulting, LLC, No. 05 CV 2719, 2006 WL 3335115, at *7-*8 (E.D.N.Y. Oct. 3, 2006) (awarding $100 per hour for associate admitted in 2005); see also Googies Luncheonette, Inc., 77 F. Supp. 2d at 491. On the other hand,

the rate of $75 per hour for the paralegal's time is reasonable. See Jacobson v. Peterbilt Elec. Contracting Inc., CV-03-31413, 2008 WL 1744544, at *4 (E.D.N.Y. Apr. 11, 2008) (awarding $80 per hour for paralegal); Finkel v. Tech Man, No. 06-CV-2264, 2007 WL 433399, at *4 (E.D.N.Y. Feb. 6, 2007) (awarding $75 per hour for paralegal).

I find that the amount of time expended on this case is not excessive. However, given the insufficient information submitted to support the rates claimed, I recommend that plaintiff be awarded fees for its attorneys' time at the reduced rate of $175 per hour and for its paralegals' time at a rate of $75 per hour, for a total fee award of $843.75.

Pursuant to section 605(e)(3)(B)(iii), plaintiff also seeks $900 in costs. In support of that request, plaintiff has submitted affidavits from Joe Hand, Jr. and Julie Cohen Lonstein attesting to the payment of $350 to the investigator for his services, $350 for filing fees, and $200 for service of process fees. Lonstein Aff. at ¶ 3, Exh. A; Hand Aff. at ¶ 10.

This Court agrees that plaintiff may be entitled to recover costs incurred for the investigator since the investigation clearly was "incidental and necessary" to the prosecution of this case. See Amato v. City of Saratoga Springs, 991 F. Supp. 62, 68 (N.D.N.Y. 1998) (citing Northcross v. Bd. of Educ., 611 F.2d 624, 639 (6th Cir. 1979)); see also Rolex Watch U.S.A., Inc. v. Brown, No. 01 CIV. 9155, 2002 WL 1226863, at *4 (S.D.N.Y. June 5, 2002)

(awarding investigative fees in trademark infringement action); Int'l Cablevision, Inc. v. Noel, 982 F. Supp. 904, 918 (W.D.N.Y. 1997) (acknowledging investigative fees recoverable as a cost under § 605); Video Aided Instruction, Inc. v. Y & S Express, Inc., No. 96 CV 518, 1996 WL 711513, at *6 (E.D.N.Y. Oct. 29, 1996) (awarding fees); Maywalt v. Parker & Parsley Petroleum Co., 864 F. Supp. 1422, 1439 (S.D.N.Y. 1994) (approving $75 rate for investigators as within "the reasonable range of rates" paid in the district). However, since the investigator entered the Salon at 11:12 p.m. and left at 11:14 p.m., I find $350 in investigative fees to be excessive and recommend that this Court award only $100 in investigative costs. Joseph Aff. at 1. There is no evidence as to the investigator's hourly rate or how the amount charged was calculated. The amount awarded of $100 is generous considering the investigative work required in this case. Moreover, based on this Court's knowledge from other cases and from conferring with colleagues, investigators hired by plaintiff (as well as other licensors of rights to certain programming broadcast via satellite) visit a number of establishments during the night that a particular boxing match is broadcast. See Garden City Boxing Club, Inc. v. Rojas, CV 2005-1047 (DGT) (MDG) (E.D.N.Y. Oct. 12, 2006), ct. doc. 13 at 18-19.

Finally, plaintiff's request for filing fees and service of process fees is reasonable.

Thus, I recommend that the Court award costs of $350 for the

Court's filing fee, $200 for service of process fees and $100 for investigative fees, for a total of $650 in costs.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that this Court award plaintiff judgment against defendant Steve Iris in the amount of $2,000.00 in damages, $843.75 in attorneys' fees and $650.00 in costs, for a total judgment of $3,493.75 and that no damages be awarded against Exclusive Unisex Salon.

This report and recommendation will be filed electronically and a copy sent by overnight delivery to the defendants on this date. Any objections must be filed with the Clerk of the Court, with a copy to the Honorable Edward R. Korman and the other party, on or before August 20, 2008. Failure to file timely objections may waive the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**SO ORDERED.**

Dated: Brooklyn, New York
August 1, 2008

/s/
MARILYN D. GO
UNITED STATES MAGISTRATE JUDGE